# Exhibit 1

STATE OF MICHIGAN
IN THE 9th CIRCUIT COURT FOR THE COUNTY OF KALAMAZOO
150 Crosstown Center, Kalamazoo, MI 49001
(269) 383-8837

MATT MELLEN,

      Plaintiffs,

V

JASON B. DALTON,
RASIER, LLC, and UBER
TECHNOLOGIES, INC.,

      Defendants.

File No.: 21-_____0066_____NO
Honorable: __Alexander C. Lipsey__

---

Matthew R. Cooper (P43072)
Cooper Law, PLC
Counsel for Plaintiff
134 South Phelps Street
P.O. Box 64
Decatur, MI 49045
(269) 436-8316
matt@vadlawcenter.com

Frank B. Melchiore (P41238)
LAWFM
Counsel for Plaintiff
535 Central Avenue, Suite 306
St. Petersburg, FL 33701
(727) 822-5900
lawfm1@gmail.com

---

**<u>PLAINTIFF'S COMPLAINT AND DEMAND FOR TRIAL BY JURY</u>**

1

## **PLAINTIFF'S COMPLAINT AND DEMAND FOR TRIAL BY JURY**

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.  I do not know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.

NOW COMES the Plaintiff, MATT MELLEN, by and through his above-stated

counsel, and for his Complaint against the Defendants, JASON B. DALTON, RASIER,

LLC and UBER TECHNOLOGIES, INC., states that the amount in amount in controversy

herein exceeds the sum of Twenty-Five Thousand Dollars ($25,000), and further states

as follows:

### JURISDICTION AND GENERAL ALLEGATIONS

1.      Plaintiff MATT MELLEN was and is an individual residing in the County of

Kalamazoo, State of Michigan at times pertinent hereto.

2.      Defendant, Uber Technologies, Inc., is a Delaware corporation,

headquartered in San Francisco, California, which is registered in the State

of Michigan, and is authorized to and is conducting business in the County

of Kalamazoo, State of Michigan.

3.      Defendant, Rasier, LLC is a Delaware Corporation, headquartered in San

Francisco, California, which is registered in the State of Michigan, and is

authorized to and is conducting business in the County of Kalamazoo, State

of Michigan.

2

4.    Defendants, Uber Technologies, Inc., and Rasier, LLC (collectively "Defendants Uber"), are in the business of transportation services / a mobile phone application that allows individuals / consumers to enter into transactions for money, communicate with, and obtain transportation services from Uber drivers as part of Defendants Uber "trade or commerce" of providing goods, property, or service primarily for personal, family, or household purposes.

5.    At all times pertinent hereto, Defendants Uber asserted, represented material facts, such as facts that are important to the transactions for money, or ones which the Defendants Uber knew or should have known would influence the Plaintiff in entering into the transactions for money, the following on its website and/or on its "App", including but not limited to:

a.    All potential drivers in the US must complete a screening before becoming an Uber driver-partner, and current drivers continue to be vetted for criminal offenses;

b.    Through our joint efforts with cities and safety experts and by working together, we're helping to create safe journeys for everyone;

c.    Before anyone can drive with Uber, they must undergo a multi-point review of driving history and criminal history.  Screening check for moving violations, drinking and drug-related offenses, violent crimes,

and felonies.  If a potential driver qualifies, they still have to remain in good standing with the law to stay in the Uber Community;

d.    Criminal and motor vehicle checks are proactively run each year, regardless of whether there's a legal obligation in the city to do so;

e.    If a driver is charged with a new offense, we have technology that can notify us of that so we can remove access to the App and DEACTIVATE the driver. This helps to ensure that all drivers continue to meet our screening standards, safety standards.

f.    All Uber rides are tracked by GPS from start to finish so there's a record of your trip if something happens.

g.    Legal / UBER COMMUNITY GUIDELINES, including -

h.    Uber uses technology to keep drivers and riders safe, for instance by GPS-tracking every ride and allowing riders to share their journeys in real time with families or friends. This is all backed up by a robust system of pre-screenings of drivers.

i.    UBER has a **dedicated incident response team on call 24/7** to investigate safety incidents.

j.    **Actions that threaten the safety of** drivers and **riders will be investigated** and, if confirmed, lead to **permanent deactivation** of your account. For example: Physical contact with riders.  Breaking the local law while using Uber. For example, texting while driving;

4

speeding or otherwise breaking local traffic laws; and using Uber to commit a crime, including drug and human trafficking or the sexual exploitation of children.

k.   Safe Driving. Uber expects drivers using the app to drive safely at all times.

l.   What leads to you losing access to your account? If we are made aware of this type of problematic behavior, we may contact you so we can investigate them. Depending on the nature of the concern, we may put a hold on your account during our investigation. If the issues raised are **serious** or a repeat **offense**, or you refuse to cooperate, you may lose access to Uber.

m.   Any behavior involving violence, sexual misconduct, harassment, discrimination, or illegal activity while using Uber can result in the immediate loss of your account. **Uber will also deactivate the account of any driver who receives** several or **serious complaints of poor, unsafe, or distracted driving while using the Uber app.** Additionally, when law enforcement is involved, we will cooperate with their investigation in accordance with our Law Enforcement Guidelines.

n.    Compliance with the Law: We expect drivers using the Uber app to act in compliance with all relevant state, federal and local laws and the rules of the road at all times.

o.    What leads to you losing access to your account? Uber may permanently deactivate your account for activities such as: engaging in serious illegal activity while using the Uber app; not maintaining valid vehicle registration or driver's license; and receiving serious traffic citations, or several traffic citations that indicate unsafe driving, while using the Uber app.

p.    Defendants Uber charge customers for, and take customer's money for "Safe Rides Fee," including for the ride that Plaintiff booked with Uber on February 20, 2016.

6.    Defendant JASON B. DALTON ("Defendant Dalton") is a resident of the County of Kalamazoo, State of Michigan and at all times pertinent hereto, was a driver, employed by Defendants Uber and was providing transportation services for individuals / consumers using transportation services / mobile phone application directed and controlled by Defendants Uber, including Plaintiff MATT MELLEN.

7.    At all times pertinent hereto, Defendant Dalton was considered an employee/agent of Defendants Uber as Defendants Uber:

6

a.   Directed and controlled the course and scope of Defendant Dalton's employment through demanding use of Defendants Uber's specific and exclusive mobile application;

b.   Directed and controlled the fares charged by Defendant Dalton in the course of his employment with Defendants Uber;

c.   Directed and controlled the collection of payments from each individual / consumer / rider who utilizes Defendant Dalton's services through Defendants Uber technology / service / app;

d.   Required its drivers to adhere to Uber's policy concerning tipping from individuals / consumers / riders;

e.   Provided Defendant Dalton with a weekly direct deposit representing payment for services performed, which represented only a certain percentage of the fees charged;

f.   Directed and controlled the vehicle's mechanical shape, cleanliness of the vehicle and use through mandatory display of Uber logo on said vehicle;

f.   Directed and set time standards by which its drivers must respond to requests;

g.   Prohibit drivers from calling passengers who have requested a ride at a rate and frequency that Uber deems "excessive"; and

   h.  Does not allow Uber drivers to negotiate, adjust or accept other forms of payment should the Uber application malfunction.

8. On or about February 20, 2016, Defendant Dalton was activated on Defendants UBER's "app," on the clock, and in the course of performing transportation duties for Defendants Uber.

9. With paying Uber passenger, Plaintiff MATT MELLEN, inside Dalton's UBER car, Defendant Dalton began driving in a deadly, dangerous manner certain to cause injury, death, damage - running red lights, crashing into other vehicles, committing crimes - including kidnaping, falsely imprisoning and battering of Plaintiff MELLEN, severely traumatizing Plaintiff Matt Mellen, and creating an unsafe, predictable hazard to himself, Uber passengers, and the public at large. Bumping hard against shoulders with the UBER driver Matt Mellen had hailed off UBER's ride-sharing App… as the two barreled down crowded Kalamazoo city roads at break-neck speeds. Matt Mellen yelled for the UBER driver to stop, to pull over….pull over!…to let Matt out. Then a dead-bang impact. The UBER driver smashed into a totally innocent person/people in a car that was in the wrong place….then the UBER driver kept going…unfazed as if nothing had just happened. Matt Mellen knew he had to do something. The surreal became reality. Should he punch this UBER driver in the head? Should he pull the wheel, and get this UBER car to go into a ditch…crash it into a

building…stop this madness? The million split second decisions that Matt Mellen plays over, and over, and over in his mind to this day. It won't stop. Somehow, Matt escaped the kidnapping, the physical confinement of the UBER driver's crimes… rolling out of the UBER car….ejecting….scraping hard across the hard pavement….alive.

10.   Based on the representations about their services upon which Plaintiff relied, Uber paying passenger and Plaintiff herein, Matt Mellen, dialed 911, tried to call, connect, and reach Uber directly to report Defendant Dalton's deadly dangerous, criminal, illegal and unsafe driving to place Uber Defendants on notice, that Dalton was / had become a danger to Matt Mellen, society, and that Uber's driver, Dalton, needed to be DEACTIVATED --- immediately per the Uber app, and immediately taken off the road so that he would stop causing injury, damages, loss  to Plaintiff, Matt Mellen, and so that there would be no more customers and/or citizens exposed to Uber's criminal driver, Dalton.

11.   Immediately, and for more than an hour after escaping Uber driver Dalton's death ride, Plaintiff and his girlfriend tried desperately to connect with Uber and Uber's 24/7 on call response team to inform Uber and seek to confirm the Uber representation that its driver would be DEACTIVATED following his episodes of criminal and dangerous/deadly driving; and yet, Defendant Dalton continued in his capacity as an Uber Driver and responded to a

request for transportation, which took him to the Meadows apartment complex on the eastern edge of Kalamazoo County, where Tiana Carruthers was shot four times by UBER driver, Dalton.

12.   Defendant Dalton engaged a woman there in verbal conversation in his capacity as an Uber driver, asking her for directions and / or the location of a certain person.

13.   Defendant Dalton then intentionally and recklessly fired bullets, live rounds of ammunition in that woman's direction, violently striking her with at least four bullets and endangering the lives of all other witnesses in the area, including children.

14.   Critically wounded and incapacitated, the woman Dalton shot laid on the ground in desperate need of medical attention; having witnessed / feeling the effects of her own personal assault and the assault on her minor daughter; her minor daughter having been present for and witnessed the attack on her mother; Defendant Dalton continued in his capacity as an Uber driver and continued to perform transportation duties for Defendant Uber. Hours later and 15 miles away, a father and his 17-year-old son were fatally shot by Dalton working for UBER, while that father and son were looking at cars at a car dealership. Within an hour of these killings, five people were gunned down in the parking lot of a Cracker Barrel restaurant.

Four of them died. A 14-year-old girl survived with a head wound and was hospitalized in critical condition.

15.    At all times pertinent hereto, Defendant Dalton knew / had knowledge that something was wrong with his mental status as the Uber Application used during the course of his employment with Uber did not appear normal; Dalton refused to contact Uber Defendants, remedy the situation or disengage his employment with Uber, or his active status with Uber's "App."

16.    Throughout the day of February 20, 2016 and during the course of his employment with Defendants Uber, Defendant Dalton continued to commit heinous crimes and acts of violence in between picking up and dropping off individuals / consumers / passengers until the time he was arrested. At no time before Dalton's arrest did Defendants Uber DEACTIVATE Dalton, despite their clear representations that they would do so, and the notice by Plaintiff and/or others to Defendants Uber of Dalton's criminal behavior.

17.    At all times pertinent hereto, Defendant Dalton and Defendants Uber were compensated and / or profited from the Uber transportation services being provided by Defendant Dalton on the evening of February 20, 2016 prior to and after Defendant Dalton's heinous crimes and acts of violence, including those that severely traumatized Plaintiff, Matt Mellen.

18.    Defendant Dalton's heinous crimes and acts of violence all occurred in or around the locations where Defendant Dalton was picking up and / or

11

dropping off individuals / consumers / passengers that were clients of Defendants Uber; as such, the actions present clear and concise evidence that Defendant Dalton's crimes arose from and occurred as a result of Defendant Dalton's active status with Defendants Uber's "App," the same App that Plaintiff relied on, that Plaintiff prioritized in choosing to do business with Defendants Uber.

19.    Defendants Uber engaged in trade or commerce; committed one or more of the prohibited methods, acts, or practices as stated in Section 3 of Michigan's Consumer Protection Act (MCL 445.901, *et. seq.*) - as alleged by Plaintiff; and Plaintiff was severely traumatized/suffered a loss, which is continuing as a result of Defendant's violation of the Act, such as under MCL 445.903, Section 3: (a) Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have;

(e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction; (q)

Representing or implying that the subject of a consumer transaction will be provided promptly, or at a specified time, or within a reasonable time, if the merchant knows or has reason to know it will not be so provided; (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; (bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and/or (cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

20.    Rather than following the clear community standards / code of conduct set forth on their own website and as a prerequisite to even using their "App," (such as DEACTIVATING Dalton for his criminal and dangerous acts though Defendant Uber's "dedicated incident response team on call 24/7 to investigate safety incidents,") in violation of Michigan's Consumer Protection Act (MCL 445.901, et. seq.), Defendants Uber did absolutely nothing. Still active on UBER's APP, Dalton continued his UBER rides, killing six, wounding many, deeply damaging Matt Mellen, for life.

20a.   The guilt kicks in for Matt Mellen; the re-living of the events of that day and night in excruciating, painful detail; the feeling of total helplessness, the sense of being thoroughly defrauded over there being no way to connect

with UBER and stop the UBER driving, the Uber driver's crimes, the shootings, the killings. And when the guilt kicks in, and when Post-Traumatic Stress Disorder meltdowns come, Matt Mellen finds himself an inpatient for treatment; treatment of conditions he never knew before February 2016; reliving the trauma, the horrific news: by phone, over the T.V. Local news, national news: Gunman shoots and kills six; wounding at least two more, critical condition; and how many more? The gunman who was UBER's driver; Matt Mellen's "*Safe Ride*", for whom Matt Mellen paid a "*Safe Rides Fee*" to the Defendants.

21.    As a result of the Defendants' violations of Michigan's Consumer Protection Act (MCL 445.901, et. seq.) and the Defendants' fraud, Plaintiff is severely traumatized, suffering Post Traumatic Stress Disorder, severe "survivor's guilt" and additional afflictions all resulting in substantial actual damages and losses to Plaintiff and entitling him to full recovery of actual damages, attorney fees, costs, and additional relief as provided through the statutory and common law of the state of Michigan.

WHEREFORE, Plaintiff demands a judgment against the Defendants, Uber, Raiser, LLC & JASON B. Dalton, in an amount over and above Twenty-Five Thousand ($25,000.00) Dollars, which Plaintiff is found to be entitled, plus costs, Interest attorney fees, exemplary damages, and whatever additional compensation to which he is entitled.

<u>COUNT I - VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT,</u>
<u>331 of 1976, MCL 445.901, *et seq.*</u>
<u>(DEFENDANTS UBER)</u>

22.     Plaintiff herein repeats, re-alleges and incorporates by reference each and every paragraph above as if fully restated herein, and further states as follows:

23.     This Count is brought under the Michigan Consumer Protection Act 331 of 1976, MCL 445.901, et seq.

24.     At all times pertinent hereto, Defendants Uber were in the process of conducting trade or commerce in the County of Kalamazoo, State of Michigan.

25.     Relying on representations made by Defendants Uber, Plaintiff chose to accept the exchange of his money to engage the trade or commerce in which Defendants Uber offered by way of its products and/or services, including that Uber plainly and clearly represented that it had a dedicated incident response team on call 24/7 to investigate safety incidents/actions that threaten the safety of riders would be investigated and, if confirmed, lead to permanent deactivation of the Uber driver. In addition, Plaintiff relied upon further representations by Defendants Uber such as specified in paragraph 5, above.

26.     In so doing, Plaintiff relied on the representations of Defendants Uber.

27.     In violation of Michigan's Consumer Protection Act (MCL 445.901, et. seq.), Defendants Uber did not have a functioning 24/7 team on call to act on, to DEACTIVATE dangerous Uber drivers, amongst many other violations of that Act, including under MCL 445.903, Section 3:

(a) Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(b) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have;

(c) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(d) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction;

(e) Representing or implying that the subject of a consumer transaction will be provided promptly, or at a specified time, or within a reasonable time, if the merchant knows or has reason to know it will not be so provided;

(f) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;

16

(g) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and/or

(h) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

28. Defendant Uber's representations about DEACTIVATING dangerous drivers through some 24/7 on call team was totally false, and even worse, Uber paying customers, like Plaintiff Matt Mellen, could not even reach Defendants Uber to report and insure that dangerous, deadly, criminal drivers and driving were DEACTIVATED, timely, immediately; but instead, Defendant Uber continued to provide Dalton access to Defendants Uber App and responded to requests for transportation, which led him to further past/present/future traumatization of Plaintiff, Matt Mellen, all in violation of Michigan's Consumer Protection Act (MCL 445.901, et. seq.).

29. More specifically, Defendants Uber violated the Michigan Consumer protection Act when Defendants Uber:

a. Led members of the public at large / consumers / riders such as Plaintiff Matt Mellen to believe that Uber properly screens, evaluates, monitors and conducts regular motor vehicle inspections, motor vehicle driving records and conducts extensive criminal background investigations when they do not;

b.      Led members of the public at large / consumers / riders such as Plaintiff Matt Mellen to believe that the services provided by Uber are safe and secure when they are not;

c.      Led consumers / riders such as Plaintiff Matt Mellen to believe that policies and procedures are in place such as GPS tracking, enhanced safety features, and a trained support team to respond to urgent safety issues, when they do not; and

d.      Led consumers / riders such as Plaintiff Matt Mellen to believe that Uber sets a standard by which drivers are trained, constantly evaluated in real-time identification, and their technology notifies them of problem drivers and revokes access to their App/DEACTIVATION.

e.      Marketed, sold, and up-charged consumers / riders such as Plaintiff Matt Mellen a "***Safe Rides Fee***" that was false, unsupported, not applied, mis-applied, wasted, converted, taken, and/or deceptive without benefit, protection, quality, grade, or standard.

f.      Violated the offers, representations, statements referenced in paragraph 5, above.

g.      Additional violations to be disclosed during the course of discovery.

30.   As a result of the Defendants' violations of Michigan's Consumer Protection Act (MCL 445.901, et. seq.), Plaintiff was severely traumatized, suffering

Post Traumatic Stress Disorder, severe "survivor's guilt" and additional afflictions all resulting in substantial actual damages and losses to Plaintiff and entitling him to full recovery of actual damages, attorney fees, costs, and additional relief as provided through the statutory and common law of the state of Michigan.

WHEREFORE, Plaintiff demands a judgment against the Defendants, Uber, Raiser, LLC & JASON B. Dalton, in an amount over and above Twenty-Five Thousand ($25,000.00) Dollars, which Plaintiff is found to be entitled, plus costs, Interest attorney fees, exemplary damages, and whatever additional compensation to which he is entitled.

<u>COUNT II - FRAUD BASED ON FALSE REPRESENTATION<br>(DEFENDANTS UBER)</u>

31.   Plaintiff herein repeats, re-alleges and incorporates by reference each and every paragraph above as if fully restated herein, and further states as follows:

32.   Relying on representations made by Defendants Uber, Plaintiff chose to accept the exchange of his money to engage the trade or commerce in which Defendants Uber offered by way of its products and/or services, including that Uber plainly and clearly represented that it had a dedicated incident response team on call 24/7 to investigate safety incidents/actions that threaten the safety of riders would be investigated and, if confirmed, lead to permanent deactivation of the Uber driver. In addition, Plaintiff relied upon further representations by Defendants Uber such as specified in

19

paragraph 5, above. Defendants Uber represented these material facts about their trade or commerce, including that Defendants had a functioning dedicated incident response team on call 24/7 to investigate safety incidents/actions that threaten the safety of riders would be investigated and, if confirmed, lead to permanent deactivation of the Uber driver: Defendants Uber charged a "Safe Rides Fee" which since on or about November 1, 2015, was expressly on Defendants' Uber webpage / App to read, "*The Safe Rides Fee supports the operation of the Uber platform, including a background check process, development of safety features in the app, **incident response**, and other operational costs*." [Emphasis added.]

33. Defendants Uber made these representations of material facts as part of their trade or commerce.

34. These representations were false when made.

35. Defendants Uber knew these representations were false when made, or Defendants Uber made these representations recklessly, that is, without knowing whether true.

36. Defendants Uber made these representations with the intent that Plaintiff, and consumers similarly situated would rely on such representations.

37. Plaintiff, Matt Mellen, relied on these representations, attempted to act upon them, and acting upon them.

38.     Plaintiff was damaged as a result of his reliance.

39.     As a result of the Defendants' Fraud Based on False Representation, Plaintiff was severely traumatized, suffering Post Traumatic Stress Disorder, severe "survivor's guilt" and additional afflictions all resulting in substantial actual damages and losses to Plaintiff and entitling him to full recovery of actual damages, attorney fees, costs, and additional relief as provided through the statutory and common law of the state of Michigan.

WHEREFORE, Plaintiff demands a judgment against the Defendants, Uber, Raiser, LLC & JASON B. Dalton, in an amount over and above Twenty-Five Thousand ($25,000.00) Dollars, which Plaintiff is found to be entitled, plus costs, Interest attorney fees, exemplary damages, and whatever additional compensation to which he is entitled.

<u>COUNT III - FRAUD BASED ON FAILURE TO DISCLOSE FACTS (Silent Fraud)<br>(DEFENDANTS UBER)</u>

40.     Plaintiff herein repeats, re-alleges and incorporates by reference each and every paragraph above as if fully restated herein, and further states as follows:

41.     Relying on representations made by Defendants Uber, Plaintiff chose to accept the exchange of his money to engage the trade or commerce in which Defendants Uber offered by way of its products and/or services, including that Uber plainly and clearly represented that it had a dedicated incident response team on call 24/7 to investigate safety incidents/actions that threaten the safety of riders would be investigated and, if confirmed,

lead to permanent deactivation of the Uber driver. In addition, Plaintiff relied upon further representations by Defendants Uber such as specified in paragraph 5, above.

42.   Defendants Uber failed to disclose material facts about their trade or commerce, including that Defendants **did <u>not</u>** have a functioning dedicated incident response team on call 24/7 to investigate safety incidents/actions that threaten the safety of riders would be investigated and, if confirmed, lead to permanent deactivation of the Uber driver. This despite that Defendants Uber charged a "Safe Rides Fee" which since on or about November 1, 2015, was expressly on Defendants' Uber webpage to read, "*The Safe Rides Fee supports the operation of the Uber platform, including a background check process, development of safety features in the app, <u>incident response</u>, and other operational costs.*" [Emphasis added.]

43.   Defendants Uber had actual knowledge of these facts.

44.   Defendants' Uber failure to disclose these material facts caused Plaintiff to have a false impression.

45.   When Defendants Uber failed to disclose these material facts, Defendants Uber knew the failure would create a false impression.

46.   When Defendants Uber failed to disclose material facts, Defendants Uber intended that Plaintiff, and consumers similarly situated would rely on the resulting false impression.

47.    Plaintiff, Matt Mellen, relied on the false impression.

48.    Plaintiff was damaged as a result of his reliance.

49.    As a result of the Defendants' Fraud Based on Failure to Disclose Facts,
       Plaintiff was severely traumatized, suffering Post Traumatic Stress
       Disorder, severe "survivor's guilt" and additional afflictions all resulting in
       substantial actual damages and losses to Plaintiff and entitling him to full
       recovery of actual damages, attorney fees, costs, and additional relief as
       provided through the statutory and common law of the state of Michigan.
       Plaintiff was severely traumatized, suffering Post Traumatic Stress Disorder
       and additional afflictions all resulting in losses to Plaintiff and entitling him
       to full recovery of actual damages, attorney fees, costs, and additional relief
       as provided through the statutory and common law of the state of Michigan.

WHEREFORE, Plaintiff demands a judgment against the Defendants, Uber,
Raiser, LLC & JASON B. Dalton, in an amount over and above Twenty-Five Thousand
($25,000.00) Dollars, which Plaintiff is found to be entitled, plus costs, Interest attorney
fees, exemplary damages, and whatever additional compensation to which he is entitled.

Dated: February 18, 2021

*Matthew R. Cooper e./s.*
Matthew R. Cooper (P43072)
Cooper Law, PLC
Counsel for Plaintiff
134 South Phelps Street
P.O. Box 64
Decatur, MI 49045
(269) 436-8316
matt@vadlawcenter.com


*Frank B. Melchiore e./s.*
Frank B. Melchiore (P41238)
LAWFM
Counsel for Plaintiff
535 Central Avenue, Suite 306
St. Petersburg, FL 33701
(727) 822-5900
lawfm1@gmail.com